SCAMMON BAY ASSOCIATION, INC., and its workers' compensation carrier, American International Group, Inc., Appellants,

v.

David ULAK, Suburban Propane, L.P., a foreign corporation, and Wave Fuels & Transportation, LLC, a domestic company, Appellees.

No. S–11392.

Supreme Court of Alaska.

Dec. 23, 2005.

Erling T. Johansen, Davison & Davison, Inc., Anchorage, for Appellants.

Thomas Van Flein, John B. Thorsness, Clapp, Peterson, Van Flein, Tiemessen & Thorsness, LLC, Anchorage, for Appellee Suburban Propane, L.P.

Michael P. McConahy, McConahy, Zimmerman & Wallace, Fairbanks, for Appellee Wave Fuels & Transportation, LLC.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

## OPINION

MATTHEWS, Justice.

## I. INTRODUCTION

An employee was injured on the job and recovered workers' compensation benefits from the employer. The employee then sued other potential tortfeasors. Under AS 23.30.015(g), the employer would normally have a lien on any money the employee recovered from other tortfeasors, up to the amount of benefits paid by the employer to the employee. But in this case, the employee and the tortfeasors settled their dispute and agreed that the employer was twenty-five percent at fault for the accident, and proposed that the superior court hold a hearing and then make a finding to this effect. Under subsection .015(g), this finding of fault could arguably have the effect of wiping out the employer's lien. Concerned about this possibility, the employer moved to intervene in the litigation between the employee and the tortfeasors. The superior court denied the motion, primarily because the motion was not made until the day before the hearing. The superior court then made a written finding that the employer was twenty-five percent at fault for the employee's injuries, and entered a judgment dismissing the employee's claims against the other tortfeasors. The employer has appealed, arguing that the superior court erred in denying intervention. We agree. Given the late date that the employer learned about the proposal to eliminate its lien, we think the intervention motion was not untimely. We therefore reverse

the denial of the motion, vacate the superior court's findings, and remand the case for further proceedings.

## II. FACTS AND PROCEEDINGS

The following facts do not appear to be contested. In March 2001 David Ulak was employed by Scammon Bay Association, Inc., as a gas station attendant. His hands were exposed to liquid propane when he disconnected a fill line coupling from a storage tank, and he lost six fingers as a result. After the accident, Scammon Bay filed a report of occupational injury under the Workers' Compensation Act. Since then, Scammon Bay's insurer, American International Group, Inc., has paid more than $150,000 in disability benefits, medical expenses, and other expenses on Ulak's behalf.[1]

In May 2002 Ulak filed a complaint against Wave Fuels and Suburban Propane. Wave Fuels contracted with Suburban Propane to supply propane to the Scammon Bay Association. Suburban Propane supplied the tank and the propane and arranged for their transportation to Scammon Bay. The complaint alleged, among other things, that Suburban and Wave were strictly liable as owners of an ultra-hazardous substance, that the storage tank was defective, and that Suburban and Wave failed to warn Ulak about the dangers of liquid propane. The complaint did not name Scammon Bay as a defendant, presumably because AS 23.30.055 limits an employer's liability for most workplace injuries to payment of workers' compensation, which Scammon Bay was already paying Ulak.

After some discovery was conducted, the parties moved for partial summary judgment on various claims. In June 2003 Wave and Suburban also moved for an order that would authorize the jury, in the event of a trial, to allocate fault to Scammon Bay. The motion concerning Scammon Bay's fault was significant for several reasons. First, a jury finding that Scammon Bay was at fault would reduce Wave and Suburban's liability for Ulak's injuries under AS 09.17.080(c).[2] Second, although Scammon Bay would normally have a right under AS 23.30.015(g) to recoup workers' compensation benefits paid from any amount recovered by Ulak from Wave and Suburban, subsection .015(g) also says that this lien is reduced by the amount of fault allocated to the employer under AS 09.17.080(c).[3] Ulak opposed the motion to permit the jury to allocate fault to Scammon Bay, presumably because his first priority at the time was to maximize his recovery from Suburban and Wave, even though it might result in Scammon Bay obtaining a $150,000 lien on any recovery. As late as September 24, 2003, Ulak was submitting briefs arguing

---

1. Scammon Bay and American International Group are represented by the same attorneys and have filed one set of papers for this appeal. We will often refer to both as "Scammon Bay."

2. AS 09.17.080 lays out Alaska's comparative fault scheme. Subsection .080(a) requires the court or the jury to make findings allocating fault to all parties responsible for the damages (with some exceptions). Subsection .080(c) says that each party's liability is based on its percentage of fault:

   The court shall determine the award of damages to each claimant in accordance with the findings and enter judgment against each party liable. The court also shall determine and state in the judgment each party's equitable share of the obligation to each claimant in accordance with the respective percentages of fault as determined under (a) of this section. Except as provided under AS 23.30.015(g), an assessment of a percentage of fault against a person who is not a party may only be used as a measure for accurately determining the per-

centages of fault of a named party. Assessment of a percentage of fault against a person who is not a party does not subject that person to civil liability in that action and may not be used as evidence of civil liability in another action.

3. AS 23.30.015(g) provides:

   If the employee or the employee's representative recovers damages from the third person, the employee or representative shall promptly pay to the employer the total amounts paid by the employer under (e)(1)(A)-(C) of this section insofar as the recovery is sufficient after deducting all litigation costs and expenses. Any excess recovery by the employee or representative shall be credited against any amount payable by the employer thereafter. If the employer is allocated a percentage of fault under AS 09.17.080, the amount due the employer under this subsection shall be reduced by an amount equal to the employer's equitable share of damages assessed under AS 09.17.080(c).

that Scammon Bay was not at fault as a matter of law.

With the motions pending, Ulak, Wave, and Scammon Bay began settlement talks in fall 2003 with a mediator. In its brief to this court, Scammon Bay admits that it initially participated in these talks. Ulak's attorney later told the superior court that Scammon Bay had abandoned the settlement talks "early in the process" and that there had been correspondence with Scammon Bay's attorney "about the outcome of the mediation." These representations are quoted in Wave's brief to this court and do not seem to be disputed by Scammon Bay.

On November 3, 2003, Ulak, Wave, and Suburban appeared before Superior Court Judge Dale O. Curda, ostensibly to argue their motions. Scammon Bay was not present at the hearing, which focused entirely on settlement instead of on the pending motions. The attorneys for the parties told the court that Wave was willing to pay Ulak $275,000, and Suburban was willing to pay $425,000. As described by one of the attorneys, Suburban and Wave would, as part of the proposed settlement, assume Ulak's obligation to "deal with" Scammon Bay's lien. But Suburban's lawyer told the court that Suburban's settlement with Ulak was "conditioned, at least by my client, on not having to pay anything toward the worker's compensation lien." Suburban's lawyer also told the court that it was the parties' view that it was "not even a close call" that a trial would result in an allocation of fault to Scammon Bay sufficient to wipe out the lien. Far from objecting to this characterization, Ulak's lawyer observed that Scammon Bay knew about the hearing, refused to admit fault, had declined to participate in the case, and was holding the parties "hostage" in their attempt to settle the case. Scammon Bay does not argue on this appeal that it was unaware of the November hearing or the possibility that the parties' proposed settlement might be discussed.

The November hearing ended without any resolution. Suburban's lawyer said the parties' objective was to "get $700,000 into the plaintiff's hands ... and also essentially do away with the worker's compensation lien." Suburban's lawyer initially suggested that the parties should join Scammon Bay to the action as a necessary party under Alaska Civil Rule 19, but concluded that since Scammon Bay had "gotten adequate notice and so forth and ... they can be bound, then maybe we can proceed without them." This prompted Wave's lawyer to propose that the court enter findings based on stipulation, briefing, and oral argument to eliminate the lien and approve the settlement. The court took the matter under advisement, and said it would "get something out in writing" to specify the next step.

On December 15, 2003, the court issued a notice of hearing. This notice set a hearing date for January 29, 2004, said the court would make "a fault-allocation finding" as discussed on November 3, and asked the parties to "submit proposed factual findings consistent with the proposed settlement by 23 January 2004." The court clerk served this notice on the parties—but not on Scammon Bay. This notice effectively superseded an earlier order scheduling a jury trial on the merits to begin during the week of January 5, 2004.

On January 15, 2004, Ulak's lawyer mailed ("via first-class U.S. mail") the court's notice and his own notice to the parties and to Scammon Bay's lawyer. Ulak's notice stated that the purpose of the January 29 hearing would be to assess the parties' and Scammon Bay's "equitable share" of damages under the comparative fault statute and AS 23.30.015(g), and specifically "invited" Scammon Bay to "attend and participate." A few days later, on January 21, 2004, Suburban mailed a copy of the parties' proposed findings of fact and conclusions of law to Scammon Bay's attorney. The findings (apparently agreed upon by Ulak, Wave, and Suburban) allocated twenty-five percent of the fault for Ulak's injury to Scammon Bay, set Ulak's damages at $2 million, and explicitly purported to wipe out Scammon Bay's lien until such time as benefits paid reached $500,000. Scammon Bay received these proposed findings on January 22, the same day that they were filed in the trial court.

Late in the afternoon of January 28, 2004, Scammon Bay began faxing thirty-seven pages of court papers to the superior court

clerk, including a motion for intervention of right and permissive intervention under Alaska Civil Rule 24(a) and (b), and a discovery request directed at each party seeking documents pertaining to the settlement. The same day, Scammon Bay faxed and mailed these papers to Wave's lawyer and hand-delivered them to the lawyers for Ulak and Suburban. Scammon Bay's motion to intervene argued that under the relevant statutes and under the equal protection and due process clauses Scammon Bay's lien could not be wiped out without an adversarial hearing. Scammon Bay also said (in conclusory fashion) in its brief accompanying the motion that it was not at fault for Ulak's injuries and that the settlement under-compensated Ulak.

The next day, January 29, the court held a hearing. Scammon Bay's lawyer called in to participate by telephone in the hearing, but the court did not take the call and did not allow him to participate.[4] The court then denied Scammon Bay's motion to intervene. The court's findings on the timeliness of the intervention motion focused on Scammon Bay's prior awareness of "the proceedings," the lapse of time since the complaint was filed, the fact that the hearing was taking place after the date that had originally been set for trial, and the delay that would result from entertaining a last-minute attempt to try the issue of Scammon Bay's fault:

> I think it's clear the main issue here is the matter of timeliness. It's been two years. The original complaint was filed in May of 2002, the injury took place over three years ago. It's obvious it's very untimely, aside from the other things I've noticed here regarding the rush to get the paperwork here this afternoon, at the last minute almost, before the court.
>
> Secondly, as far as permissive intervention, the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of a party, not only is that a yes, but that's a resounding yes. It would be horrific consequences here for the whole concept of the litigation process, aside from Mr. Ulak's injuries, to delay this case at this point and allow intervention. As the parties have pointed out, this is the time for trial, and if we did have a jury coming in here, that—whoever tried to intervene would not be allowed to intervene, and this is the time for trial and—on the facts.
>
> . . . .
>
> And, finally ... the parties have indicated as part of the background here, throughout this file it's very clear that Mr. Johansen and his client [Scammon Bay and American International Group] had notice of the proceedings and they couldn't come in unless they acceded to it, and they decided not to. And it's clearly unfair and prejudicial to everyone here—involved here for the court to allow intervention at this time.

The court went on to say it would approve the findings of fact, emphasizing that the case had been "hard-fought and highly intensively litigated," that the parties had submitted a "several-inch" file of depositions to support the findings, that "these are not stipulated facts," that the court had read these papers, and that it believed the fault allocation to Scammon Bay was "within a ballpark ... which is entirely appropriate." Soon afterward, the court signed the parties' written findings of fact and conclusions of law. These findings and conclusions prohibited Scammon Bay from asserting a lien on Ulak's recovery and barred Scammon Bay from using the recovery as an offset against future benefits until total benefits paid exceeded $500,000. The court subsequently entered a judgment dismissing the complaint with prejudice.

Scammon Bay appealed.

## III. DISCUSSION

■ A failed intervenor has standing to appeal only the denial of intervention, so we will consider that issue without reaching Scammon Bay's arguments that the superior court's allocation of fault was clearly errone-

---

4. "THE CLERK: Mr. Johansen is calling. THE COURT: All right. Well, we're not going to deal with him right now." If the court ever took the call from Scammon Bay, it did not happen on the record.

ous or is unenforceable against Scammon Bay.[5]

▮ A "timely application" is a prerequisite to intervention, whether the movant seeks mandatory intervention under Civil Rule 24(a) or permissive intervention under Rule 24(b).[6] Timeliness is the only issue here, since the superior court said untimeliness was the "main" reason for its decision to deny Scammon Bay's motion to intervene and the parties appear to concede that Scammon Bay is otherwise entitled to intervention of right under Rule 24(a). We review the superior court's assessment of the timeliness of Scammon Bay's motion for abuse of discretion.[7]

▮ We have said that the trial court should determine the timeliness of a proposed intervention by weighing "the lapse of time in the light of all the circumstances of the case, focusing on whether any delay in moving for intervention will prejudice the existing parties to the case."[8] The federal courts have made this inquiry somewhat more specific. They look at four factors:

(1) the length of time the applicant knew or reasonably should have known that its interest was imperilled before it moved to intervene; (2) the foreseeable prejudice to existing parties if intervention is granted; (3) the foreseeable prejudice to the applicant if intervention is denied; and (4) idiocratic circumstances which, fairly viewed, militate for or against intervention.[9]

Federal law also offers some guidance on how to weigh these four factors. According to the Wright & Miller treatise on federal procedure, motions to intervene of right are found to be untimely less often than are permissive intervention motions due to the greater likelihood of prejudice to the applicant.[10] In addition, the "requirement of timeliness is not a means of punishment for the dilatory." Instead, the "most important consideration" when making the timeliness determination is the prejudice caused by the applicant's delay in making its motion.[11] We have relied before on federal practice in applying Rule 24[12] and will use the four-factor test and the accompanying interpretive rules to determine the timeliness of Scammon Bay's motion.

Under this framework, we think that it was an abuse of discretion to deny Scammon Bay's motion as untimely.[13]

---

5. *See Graham v. City of Anchorage*, 364 P.2d 57, 59 (Alaska 1961). Scammon Bay has argued that the findings are unenforceable against it because they violate the due process and equal protection clauses of the state and federal constitutions, contravene the exclusivity provisions of AS 23.30.055, and fail to reflect an independent determination by the court. Scammon Bay has also argued that since Ulak previously opposed allocating any fault to Scammon Bay, he should be estopped from agreeing to the settlement that serves as the basis of the findings.

6. Civil Rule 24(a) provides:
   Upon timely application anyone shall be permitted to intervene in an action when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
   Civil Rule 24(b) also requires a "timely application."

7. *Alaskans for a Common Language, Inc. v. Kritz*, 3 P.3d 906, 912 (Alaska 2000).

8. *Wichman v. Benner*, 948 P.2d 484, 488 (Alaska 1997) (quoting 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 1916 (1986)).

9. *Banco Popular de Puerto Rico v. Greenblatt*, 964 F.2d 1227, 1231 (1st Cir.1992); *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir.2001) (similar).

10. 7C FEDERAL PRACTICE AND PROCEDURE, *supra* note 8, § 1916.

11. *Id.*

12. *Wichman*, 948 P.2d at 488.

13. Since we conclude as a result of our four-factor analysis that Scammon Bay's motion should not have been denied, we do not address Scammon Bay's argument that the appellees should be estopped from opposing Scammon Bay's motion to intervene because Ulak had invited Scammon Bay to participate at the January 29 hearing.

The first factor is the length of Scammon Bay's delay. The question is when Scammon Bay should have known that "its interest in the case would no longer be adequately protected by the existing parties."[14] The superior court said "[i]t's been two years," apparently charging Scammon Bay with a duty to intervene as soon as the complaint was filed. We do not think the duty arose then.

An employer with a compensation lien whose fault is subject to allocation during litigation brought by an injured worker under AS 23.30.015 has several interests. The employer wants the plaintiff to recover from the third party an amount sufficient to cover its lien and to provide an offset against future benefits. The employer also wants to minimize its "equitable share of damages assessed under AS 09.17.080(c)"[15] because that amount will be deducted from its lien and, if it is greater than the lien, will require the employer to keep paying future benefits until the lien plus the benefits exceed the equitable share.[16] The equitable share can be minimized by establishing that the employer either bears no responsibility for the accident or only a slight degree of responsibility. These interests of the employer will usually be consistent with those of the plaintiff. A rule that would require an employer to intervene in section .015 actions as a matter of course would be undesirable because, as we noted in *Wichman*, there is a "potential for prejudice to the employee ... by joining the holder of a right to reimbursement of workers' compensation benefits as party plaintiff before trial in an employee's suit against a third party."[17]

In this case Scammon Bay had good reason not to intervene at the outset of the litigation or when the defendants moved for an order that would permit the jury to allocate fault to Scammon Bay. Ulak was represented by competent counsel, his interests were consistent with Scammon Bay's, and he was opposing any allocation of fault to Scammon Bay. Indeed one of the grounds for Ulak's opposition to allocation to Scammon Bay was an "empty chair" argument based on the assumption that it is easy to lay disproportionate blame at trial on an unrepresented actor. This argument would have been undercut by Scammon Bay's intervention.

The next point at which it might be argued that Scammon Bay should have intervened is at or around the November 3, 2003 hearing. By the November hearing the situation had changed. The parties had agreed on how much Wave and Suburban should pay and they were unified in seeking to eliminate Scammon Bay's lien, either as a means of sweetening the pot for Ulak or as a means of diminishing the amount the settlement required Wave and Suburban to pay. It also seems that Scammon Bay was aware that a settlement was in the works, that there would be a hearing on this, and that even Ulak viewed Scammon Bay's lien as a "monkey wrench." Moreover, by November 20, Scammon Bay had obtained the court's log notes showing that Wave had urged the court to allocate fault to Scammon Bay (as one of several options) and that the court had taken the matter under advisement.

Yet we do not believe that Scammon Bay's duty to intervene arose in November. At this point, Ulak's interest in eliminating the lien was contingent on the superior court's approving the settlement, which in turn was contingent on the court's willingness to make a summary finding that Scammon Bay's equitable share of damages was at least $150,000. Neither Scammon Bay nor the parties to the action knew what the court would do following the November 3 hearing. Had the court rejected the possibility of a summary finding against Scammon Bay, thereby rejecting the tentative settlement, Scammon Bay's interests would have been realigned with Ulak's, vindicating Scammon Bay's decision to stay out. At a minimum, Scammon Bay reasonably could have expected that no summary finding binding on it would be made unless it

14. *Banco Popular,* 964 F.2d at 1231.

15. The quoted language is contained in AS 23.30.015(g).

16. *Id.*

17. 948 P.2d at 489.

first received notice and an opportunity to be heard.

■ The issue is therefore when Scammon Bay received notice that the court really was going to adjudicate the extent of its fault.[18] On December 15 the court issued a notice of hearing for the purpose of allocating fault to Scammon Bay. But, in what was probably an oversight by the parties and the court, Scammon Bay was not notified of this hearing until Ulak's lawyer mailed the notice to Scammon Bay on January 15, specifically inviting Scammon Bay to participate. Assuming two days for delivery by the post office (both sender and receiver being in Anchorage), Scammon Bay was first informed of the hearing on January 17. We conclude that this was the date upon which Scammon Bay's duty to intervene arose. Measured from January 17, only twelve days elapsed before Scammon Bay submitted its motion to intervene. This is a relatively short delay.[19]

■ The second factor to be considered in determining the timeliness of Scammon Bay's attempted intervention is the prejudice to the existing parties caused by the delay. The court said there would be "horrific consequences here for the whole concept of the litigation process, aside from Mr. Ulak's injuries, to delay this case at this point and allow intervention," apparently because January 29 was "the time for trial." We think there are several problems with this assessment. First, the court appeared to take into account the prejudice that would follow from granting

intervention generally, rather than the prejudice specifically resulting from Scammon Bay's lack of diligence, if any, in moving to intervene.[20] Second, January 29 was not actually the time for trial. Although the original scheduling order had set trial for the week of January 5, 2004, this timing had been abandoned by December 15, 2003, when the court ordered the parties to submit proposed findings of fact for a summary hearing on January 29. The hearing notice did not contemplate a trial or anything like a trial and indeed the court ruled on the proposed findings entirely on the basis of the written record. There was no jury selection and presumably no preparation by the court or the parties for a trial on that date.

This is not to say that there was *no* prejudice from Scammon Bay's delay.[21] Had Scammon Bay submitted its papers at least two or three days before the hearing, instead of at the last minute, it certainly would have been more convenient for everyone. The hearing probably would have been cancelled or postponed, if only to give the parties some time to respond to Scammon Bay's motion. This would have saved the attorneys (and Ulak himself) the trouble of coming to Bethel and saved the court the trouble of preparing for a hearing on Scammon Bay's fault. In this way, Scammon Bay's motion did threaten a "last minute disruption" of at least some "painstaking work by the parties and the court," and preventing such disruptions remains the "purpose of the basic requirement

18. *See Mundt v. Northwest Explorations, Inc.,* 947 P.2d 827, 830 (Alaska 1997) (motion to intervene was timely; although claimant was passive throughout much of the litigation, she acted promptly to intervene once the superior court issued an order that injured her rights more broadly than she could have previously anticipated).

19. *Cf. United States v. City of Chicago,* 870 F.2d 1256, 1263 (7th Cir.1989) (white police sergeants' motion to intervene to oppose Title VII consent decree was timely, where motion was filed six weeks after duty to intervene arose). *City of Chicago* involved a somewhat more complex case than this one, and the would-be intervenor was more of a stranger to the case than Scammon Bay was here (which made a six-week delay somewhat more justifiable). So *City of Chi-*

*cago* is not directly on point, but it does help persuade us that the twelve-day delay in this case was not significant.

20. "[T]he relevant issue is not how much prejudice would result from allowing intervention, but rather how much prejudice would result from the would-be intervenor's failure to request intervention as soon as he knew or should have known of his interest in the case." *Stallworth v. Monsanto Co.,* 558 F.2d 257, 267 (5th Cir.1977).

21. *Cf. Brown v. Cook Inlet Region, Inc.,* 569 P.2d 1321, 1323 n. 7 (Alaska 1977) (where corporation lost proxy fight in the trial court and decided not appeal, individual board members who favored appealing could intervene after judgment to prosecute appeal, given absence of any prejudice flowing from failure to intervene earlier).

that the application to intervene be timely." [22] All the same, the waste of other people's time that would have been caused by Scammon Bay's delay (had its motion been granted) still seems relatively small, being much smaller for example than the disruption that would result from granting a motion made on the eve of an actual trial.

The third factor to consider in the timeliness analysis is the prejudice to Scammon Bay of having its motion denied. The superior court did not say anything about this factor, but it seems obvious that the prejudice to Scammon Bay from the denial of its motion is potentially severe. The superior court made written findings that purport to deprive Scammon Bay of a lien worth $150,000 and an offset against future benefits of another $350,000. Yet this was done without giving Scammon Bay (then the only entity with an interest in protecting Scammon Bay's interest) a chance to be heard in defense of its rights. At a minimum, we think a potential intervenor has been significantly prejudiced where it is denied a chance to contest a claim against it of this magnitude.

But what if the superior court's finding does not have a preclusive effect on Scammon Bay? Scammon Bay argues that the summary finding made in this case is not enforceable under the comparative fault scheme and that giving the finding such a preclusive effect would violate the due process and equal protection clauses. If these arguments are correct, then the court's finding would be a nullity with respect to Scammon Bay and the denial of intervention would not result in any prejudice to Scammon Bay. The absence of prejudice to Scammon Bay would weaken Scammon Bay's argument for why it should be allowed to intervene [23] but Scammon Bay would hardly mind losing that battle so long as it wins the war to protect its lien. Do we then need to determine the preclusive effect of the fault allocation entered against Scammon Bay, if only to decide whether it was erroneous to deny intervention? Because we must consider the preju-

dice not only to Scammon Bay but also to the existing parties, the answer is no. If Scammon Bay were correct about the preclusive effect (or lack thereof) of the court's finding, the resulting prejudice to Wave, Suburban, and/or Ulak would militate against denying intervention to Scammon Bay. These parties reached an agreement that appears to have been premised at least informally on the understanding that no one would have to pay Scammon Bay on its lien. If we upheld the denial of intervention on the ground that Scammon Bay can still collect its lien, notwithstanding the court's summary finding against Scammon Bay in absentia, then someone among Suburban, Wave, and Ulak (the record is unclear as to whom) would be forced to pay Scammon Bay, or at least to shoulder the burden of trying not to pay Scammon Bay, on an apparently valid lien. We consider this to be an "idiocratic" factor suggesting that the whole arrangement should be unwound to permit the parties (potentially including Scammon Bay) to try the case or to reach whatever agreement they can on how to deal with a lien that cannot be gotten rid of as easily as initially expected.

Since we think the motion for intervention should have been granted whether or not the court's finding had preclusive effect, we do not have to decide the finding's enforceability. The above states our assessment of each factor in the timeliness analysis. The timing of Scammon Bay's motion was understandable under the circumstances, and the prejudice to the parties and the court caused by the delay was only moderate. Moreover, the prejudice that would result from upholding the decision to deny the motion has a severe negative effect on at least somebody: if the finding against Scammon Bay is binding, then it has lost a chance to save its lien; if the finding against Scammon Bay is not binding, then Ulak, Suburban, or Wave would have to pay the lien or defend against it, notwithstanding an agreement possibly premised on the lien's having been eliminat-

---

22. *Banco Popular,* 964 F.2d at 1232.

23. *See, e.g., Red Top Mining, Inc. v. Anthony,* 983 P.2d 743, 746 (Alaska 1999) (intervention was properly denied as untimely; there was no preju-

dice because trial court stated on the record that the proceedings should not be interpreted to injure would-be intervenor's rights).

ed. Considering these factors in light of the general reluctance to reject interventions of right on timeliness grounds, and in light of the understanding that the timeliness requirement is not a punishment for the dilatory,[24] we think it was an abuse of discretion to deny the motion to intervene here.

Finally, we note that the many cases cited by Suburban and Wave are not inconsistent with our decision. Most of these cases are completely different from this case. For example, Suburban cites *D'Amato v. Deutsche Bank*,[25] in which a member of a class action tried to intervene to stop a class settlement that he thought left money on the table. The court upheld a decision denying intervention. The circumstances of a class action are quite different from those presented here since a class member is represented by the lead plaintiff, who has fiduciary duties to the entire class. By contrast, in this case the parties had no duty to Scammon Bay and indeed knew Scammon Bay's position all along; they deliberately came to an agreement opposed to Scammon Bay's interests, without ever attempting to join Scammon Bay, as they might easily have done.

Suburban also cites *Hartford Accident & Indemnity Insurance Co. v. Birdsong*,[26] which is probably the strongest case in Suburban's favor. In that case, two insurance companies were potentially liable for any judgment entered against the individual tortfeasor.[27] The plaintiff sued the tortfeasor and got a default order, and approximately a year later the insurance companies (despite an earlier, unfulfilled promise to vindicate their interest through a separate declaratory judgment action) sought to intervene a few weeks before a trial that was to determine the plaintiff's damages.[28] The Maryland Court of Special Appeals suggested in dicta that intervention was untimely.[29] In this case, however, Scammon Bay attempted to intervene *before* any order was entered affecting its interest and any delay involved was a matter of days rather than months or years. We also note that in *Weimer v. Ypparila*,[30] the South Dakota Supreme Court was faced with somewhat similar facts and allowed an insurance company to intervene after a judgment prejudicing the insurer was entered in the insurer's absence, even though the insurer had previously been notified that its interests were at risk from the proceedings. Without trying to reconcile *Weimer* with *Birdsong*, we believe the weight of authority is consistent with our decision here.

## IV. CONCLUSION

The order denying Scammon Bay's motion to intervene is REVERSED. We also VACATE the order dismissing the complaint and VACATE the findings that set damages and allocate fault to the parties and to Scammon Bay. Any of the parties is free to argue on remand that the terms of the settlement agreement require the complaint to be dismissed again; this issue has not been briefed and our decision should not be read as construing the agreement.

---

**24.** 7C Federal Practice and Procedure, *supra* note 8, § 1916.

**25.** 236 F.3d 78 (2d Cir.2001).

**26.** 78 Md.App. 343, 553 A.2d 251 (1989), *cert. denied*, 316 Md. 427, 559 A.2d 790 (1989).

**27.** *Id.* at 252–54.

**28.** *Id.* at 254.

**29.** *Id.* at 255. The opinion in this case merely confirms that a prior, interlocutory appeal in the same case was correctly decided by the same court. In both cases, the court seems to refrain from relying on untimeliness alone, since it was unclear whether the trial court had relied on this ground. The prior decision is *Hartford Ins. Co. v. Birdsong*, 69 Md.App. 615, 519 A.2d 219 (1987).

**30.** 504 N.W.2d 333 (S.D.1993).