**Kenneth KIRK, Appellant,**

v.

**Laverna DEMIENTIEFF and United Companies, Appellees.**

**No. S–11760.**

Supreme Court of Alaska.

Oct. 6, 2006.

---

Michael C. Geraghty, Delisio Moran Geraghty & Zobel, P.C., Anchorage, for Appellant.

Laura L. Farley and Michelle M. Meshke, Farley & Graves, P.C., Anchorage, for Appellee United Companies.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

BRYNER, Chief Justice.

## I. INTRODUCTION

Attorney Kenneth Kirk appeals the superior court's denial of his motion to intervene in a tort suit brought by his former client, Laverna Demientieff. Kirk sought to intervene in that suit to appeal the superior court's order denying relief from its earlier judgment dismissing Demientieff's complaint for violating the statute of limitations. Demientieff had no interest in appealing that judgment—or the subsequent order denying relief from the judgment—because she had fired Kirk and was suing him for malpractice. In moving for intervention, Kirk claimed that Demientieff's refusal to appeal the order denying relief from the judgment gave him an adequate justification to intervene. The superior court rejected his motion, finding that it was untimely because Kirk could have intervened on the same ground more than a year earlier, when Demientieff had refused to directly appeal the original judgment of dismissal. Because the record supports the superior court's finding that Kirk reasonably should have moved to intervene sooner, we hold that the court did not abuse its discretion in denying Kirk's motion to intervene.

## II. FACTS

A driver employed by United Companies injured Laverna Demientieff in an auto accident in Bethel on October 31, 2000. Demientieff hired the Anchorage law firm of Kenneth Kirk and Associates (Kirk) to represent her in her tort action against United Companies. Kirk sent Demientieff's complaint by express mail to the superior court in Bethel on October 30, 2002, the day before the statute of limitations on the claim expired. Although the complaint arrived at the Bethel Post Office and was apparently placed in the court's post office box that day, the court did not acknowledge receiving it for filing until November 4, 2002.

United moved to dismiss the complaint for violating the statute of limitations. Kirk opposed the motion on behalf of Demientieff, offering evidence to show that the complaint had arrived in Bethel on October 31, that the post office had attempted delivery that day, but that the court simply missed the delivery. On March 26, 2003, despite Demientieff's opposition, Superior Court Judge Leonard R. Devaney granted United's motion to dismiss, expressly confining his ruling to the pleadings.

Demientieff moved for reconsideration on April 3, 2003. Pointing to the evidence presented in support of her opposition, Demientieff argued that the superior court erred by basing its dismissal entirely on the pleadings. The superior court never ruled on Demientieff's motion for reconsideration; thus, under Alaska Civil Rule 77, the motion was deemed denied thirty days after being filed.[1] On July 22, 2003, the superior court issued a final judgment dismissing Demientieff's case.

Meanwhile, on April 4, 2003, the day after Kirk filed Demientieff's motion for reconsideration, Demientieff hired a new lawyer, who sent Kirk a letter advising him that Demientieff did not want Kirk to take any further action in her case. After noting that he had "reviewed the order from Judge Devaney granting the motion to dismiss for failure to file the suit within the statute of limitations," Demientieff's new attorney advised Kirk to "contact your malpractice carrier and put them on notice that Ms. Demientieff has hired my firm to represent her in an action against your office." On April 8 Demientieff's attorney filed a formal notice of substitution of counsel with the superior court in Bethel. And on April 15, 2003, he sent Kirk another letter, expressly refusing to supplement Kirk's April 3 motion for reconsideration and unequivocally advising Kirk that Demientieff would not appeal the superior court's order of dismissal, because "I believe that such an appeal would be without merit."

Despite the substituted appearance by Demientieff's new counsel and the April 15 letter advising Kirk to take no further action in the case, on May 1, 2003, Kirk filed a "Sworn Supplement to Motion to Reconsider," in which, acting as "former attorney for the Plaintiff," he informed the court that the Bethel Postmaster had told him that the post office in Bethel received an express mail delivery for the court on October 31, 2002, and had placed a notice to that effect in the court's post office box that morning. "It is possible," Kirk's supplement observed, "that the person who picked up the mail for the courthouse that day, simply took the slip with him or her, without picking up that mail itself." Kirk went on to argue that, "[i]n those circumstances, the case should not be dismissed under the statute of limitations." Beyond submitting this supplemental information, Kirk did not file anything seeking further relief; nor did he seek to intervene in the case at that time.

In late August 2003, thirty days after the superior court entered its July 22 judgment dismissing Demientieff's case, the allowable time for appealing that judgment expired without any appeal having been filed.[2]

On September 24, 2003, Demientieff filed a malpractice action against Kirk's law firm. About nine months later, in May 2004, Kirk, through his malpractice attorney, stipulated with Demientieff's attorney to let Kirk's attorney file on Demientieff's behalf a motion for relief from judgment seeking to set aside the order dismissing her personal injury claim as time-barred. Under the terms of the stipulation, however, the malpractice action would go forward regardless of the motion; and Demientieff expressly "d[id] not agree . . . or in any way bind herself to the prosecution of an appeal if the motion is unsuccessful."

In keeping with the stipulation, Kirk's counsel filed a motion for relief from judgment on June 15, 2004, nearly eleven months after Judge Devaney entered the final judgment dismissing Demientieff's case. The motion asked the court to grant Demientieff relief from judgment under Alaska Civil Rule 60(b)(1) on account of mistakes of law allegedly made by the court.[3] The argument advanced in the new motion was essentially similar to the one set out in the earlier motion for reconsideration but offered additional evidence. The new evidence suggested that the complaint was placed in the court's Bethel post office box on October 31, 2002, but that the court failed to pick up its mail from its box until November 4. Citing analogous cases from other jurisdictions, the

---

**1.** See Alaska R. Civ. P. 77(k)(4).

**2.** See Appellate Rule 204(a).

**3.** Under Alaska Civil Rule 60(b)(1), "[T]he court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: . . . mistake, inadvertence, surprise, or excusable neglect."

motion asserted that, under these circumstances, the complaint should have been deemed filed when it was placed in the court's post office box.

United opposed Demientieff's motion for relief from judgment, characterizing it as "nothing more than an untimely appeal." On October 12, 2004, after considering Demientieff's motion and United's opposition, Judge Devaney entered an order denying relief from judgment, primarily because the motion was untimely. In ruling that Demientieff had taken too long to seek relief, the court emphasized that under Rule 60(b)(1), a motion for relief from judgment based on a mistake of law ordinarily must be filed within the time frame allowed for a direct appeal—thirty days. Here, the court pointed out, Kirk waited nearly eleven months after entry of judgment before filing Demientieff's motion. Although the court recognized that the thirty-day deadline could be relaxed in a truly exceptional case, it noted that such exceptions would be appropriate only upon proof of compelling circumstances justifying the extraordinary delay. Here, the court found, Demientieff had failed to show any arguably compelling justification for exceeding the thirty-day deadline.

Soon after the superior court announced its decision, Demientieff notified Kirk that she would not consent to an appeal—a choice that the stipulation expressly allowed her to make. On October 25, 2004, Kirk moved to intervene as a matter of right under Civil Rule 24(a) for the purpose of appealing the order denying the Rule 60(b) motion. Asserting that his interest in the case sufficed to require intervention, he argued that his attempt to intervene in the case was timely because he sought to intervene as soon as Demientieff informed him that she would decline to appeal. According to Kirk, Demientieff's decision left him no option but to seek intervention to pursue the appeal.

Judge Devaney denied intervention, finding Kirk's motion untimely because his interest in intervening first arose long before Demientieff filed her motion for relief from judgment. Specifically, the superior court found, Kirk knew that his interest in the case diverged from Demientieff's as soon as he learned that Demientieff had hired a new lawyer and intended to sue him for malpractice; in the court's view, then, Kirk should have moved to intervene before the deadline for directly appealing the original judgment.

Kirk filed this appeal from the superior court's ruling on intervention.

Since filing this appeal, Kirk has entered into an agreement to settle the malpractice claim with Demientieff; as part of the settlement, Demientieff agreed to give Kirk an assignment of her personal injury claim against United.

## III. DISCUSSION

### A. Parties' Arguments

On appeal, Kirk challenges the superior court's ruling on intervention, insisting that the court erred in finding that his motion to intervene was untimely. Kirk argues that he could not reasonably have been expected to seek intervention earlier because his interest in the personal injury action aligned with Demientieff's and was being adequately represented by her until she informed him that she did not intend to appeal the superior court's October 12, 2004, order denying her motion for relief from judgment. Kirk separately argues that, if we accept his position on the issue of timeliness, we should proceed to review the superior court's decision denying Demientieff's Rule 60(b) motion. On that point, Kirk urges us to reverse the superior court's finding that the Rule 60(b) motion was untimely and to hold that relief from judgment should have been granted based on the evidence indicating that Demientieff's complaint was delivered to the superior court's post office box in Bethel on October 31, 2001, the day before the statute of limitations expired.

In response, United urges us to uphold the superior court's order denying Kirk's motion to intervene. It contends that Kirk fails to meet the requirements for intervention because: his motion was indeed untimely; he has no valid interest in Demientieff's action against United; and his intervention would cause prejudice to United by forcing it to defend an untimely appeal. "Kirk could have attempted to intervene to appeal the original

decision," United insists, but "he chose not to do so." United further argues that even if Kirk were allowed to intervene, there would be no basis for reversing the superior court's order denying Demientieff's motion for relief from judgment. In United's view, Kirk had no compelling reason to wait until eleven months after the final judgment was entered before filing Demientieff's Rule 60(b) motion. And in any event, United maintains, the motion lacks merit because the superior court correctly ruled that Kirk filed Demientieff's complaint after the statute of limitations expired.

### B. Civil Rule 24(a) Timeliness Requirement

Kirk moved to intervene as a matter of right under Alaska Civil Rule 24(a). The superior court denied his motion, finding that it was untimely because Kirk waited for more than a year after Demientieff filed her malpractice action against Kirk before he sought to intervene in her underlying suit. Rule 24(a) expressly requires a motion for intervention to be timely:

> Upon timely application anyone shall be permitted to intervene in an action when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.[4]

■ We have adopted the four-part analysis widely used by federal courts to determine whether a motion to intervene meets Rule 24's timeliness standard; this test requires us to consider:

(1) the length of time the applicant knew or reasonably should have known that its

interest was imperilled before it moved to intervene; (2) the foreseeable prejudice to existing parties if intervention is granted; (3) the foreseeable prejudice to the applicant if intervention is denied; and (4) idiocratic circumstances which, fairly viewed, militate for or against intervention.[5]

■ We will address each of these timeliness factors in turn, and then will assess their combined effect.

### 1. Knowledge of imperilled interest

Regarding the first factor of this analysis—"the length of time [Kirk] knew or reasonably should have known that [his] interest was imperilled before [he] moved to intervene"[6]—the superior court observed that "it should have been apparent to Kirk that his interest in the action might not be adequately represented" as soon as Demientieff's new counsel notified Kirk in April 2003 that Demientieff planned to sue Kirk for malpractice and did not intend to appeal Judge Devaney's March 2003 order dismissing her complaint as time-barred. Relying on this finding, the superior court determined that Kirk should have known that he needed to intervene no later than April 2003, eighteen months before he actually moved to intervene in October 2004. "Even viewing events in a light most favorable to Kirk," the court observed, "his motion to intervene should have been filed within the time for appealing the final judgment (July 22, 2003)."

The superior court's analysis of this factor finds ample support in the record. Demientieff's new counsel sent two letters to Kirk in April 2003, soon after Kirk filed Demientieff's motion for reconsideration of the order dismissing Demientieff's complaint as time-barred. The first letter to Kirk told him that Demientieff had hired a new attorney and

---

4. We have previously recognized that an applicant must meet four criteria to intervene under this rule, the first of which is timeliness:

> (1) the motion must be timely; (2) the applicant must show an interest in the subject matter of the action; (3) it must be shown that this interest may be impaired as a consequence of the action; and (4) it must be shown that the interest is not adequately represented by an existing party.

*State v. Weidner*, 684 P.2d 103, 113 (Alaska 1984).

5. *Scammon Bay Assoc., Inc. v. Ulak*, 126 P.3d 138, 143 (Alaska 2005) (quoting *Banco Popular de Puerto Rico v. Greenblatt*, 964 F.2d 1227, 1231 (1st Cir.1992)).

6. *Scammon Bay*, 126 P.3d at 143.

planned to sue Kirk for malpractice. The second informed him that Demientieff would refuse to appeal the superior court's statute-of-limitations ruling. These communications gave Kirk clear notice that Demientieff had terminated their attorney-client relationship and that their interests had sharply diverged.

Demientieff, having opted to sue Kirk for malpractice instead of pursuing her claim against United, now had a keen interest in establishing that Kirk's failure to file a timely complaint had caused her to lose a meritorious claim. From her perspective, then, it would have been counterproductive to overturn the order dismissing her claim. Thus, Demientieff immediately let Kirk know that she would refuse to appeal.

Kirk, on the other hand, having just been told that he faced a potential malpractice claim by his former client, now found himself with a personal stake in the superior court's order dismissing Demientieff's case: he could fend off the malpractice claim, or at least minimize his potential liability, if the superior court's order were overturned—either on the pending motion for reconsideration or by appealing the order. The record makes it clear that Kirk understood this situation: soon after receiving the letters from Demientieff's new attorney telling him to take no further action in Demientieff's case, Kirk, acting as Demientieff's "former attorney," filed a supplement to the motion for reconsideration that unmistakably sought to bolster the pending motion.

Thus, when the superior court denied reconsideration and entered its final judgment against Demientieff in July 2003, Kirk's interest in directly appealing that judgment was precisely the same as the interest he asserted the following year when he moved to intervene for the purpose of appealing the

October 2004 order denying relief from that judgment. Moreover, his situation in relation to Demientieff was precisely the same at both times: Demientieff refused to appeal the July 2003 final judgment, just as she would later refuse to appeal the October 2004 order denying relief from the judgment.

In short, Kirk could have filed a motion to intervene in July 2003—for the purpose of directly appealing the superior court's freshly entered judgment of dismissal—on precisely the same ground that he asserted in October 2004, when he attempted to intervene to collaterally appeal that judgment. The record fails to establish any satisfactory justification for Kirk's failure to seek intervention at the earlier juncture.[7]

In challenging the superior court's decision to reject his Rule 60(b) motion as untimely, Kirk argues that his delay in filing the motion was justified because his malpractice counsel needed time to study the case and negotiate with Demientieff's counsel for the stipulation to file the Rule 60(b) motion. The same argument could conceivably be offered to justify Kirk's late intervention, as well. But the decision to take this collateral course, which required Demientieff's permission, appears to reflect a tactical choice. Kirk fails to explain why he could not have promptly sought leave to intervene for purposes of directly appealing the judgment, a course that did not require Demientieff's negotiated consent.

Kirk also insists that Demientieff adequately represented his interests until she refused to appeal the superior court's order denying the Rule 60(b) motion. But this argument is unavailing. As we have already noted, Kirk's and Demientieff's interests diverged fundamentally when Demientieff fired Kirk as her attorney, announced her intent

---

7.  We have not previously had an occasion to consider whether an attorney accused of malpractice would ever be entitled to intervene as a matter of right in the claimant's original case in order to challenge the legal ruling that precipitated the malpractice claim. We note that at least some courts considering Rule 24(a) have expressed policy-based doubts about the desirability of allowing attorneys to intervene in analogous settings. *See, e.g., Butler; Fitzgerald & Potter v. Sequa Corp.,* 250 F.3d 171, 177 (2d Cir. 2001) (rejecting the attempt of a law firm that

held a charging lien against a former client to intervene in that former client's suit because "[t]he interest of discharged counsel seemingly is not in the subject of the underlying action … that precipitated the litigation, [as required by Rule 24(a)], but is rather an interest in recovering delinquent attorney's fees following an award in favor of its former client"). Our analysis assumes that any policy reasons weighing against allowing an attorney to intervene in such cases would not categorically preclude intervention under Rule 24(a).

to sue him for malpractice, and told him that she would not appeal the superior court's order of dismissal. Although Kirk's malpractice attorney later negotiated a stipulation allowing Kirk to move for relief from judgment, the realignment of interests resulting from this agreement was temporary and provisional, at best. The express terms of the stipulation made it clear that the malpractice action would go forward despite the Rule 60(b) motion, that the stipulation would not bind Demientieff to pursue an appeal if the superior court denied relief, and that no appeal could be filed without her express, written approval. When viewed in light of the stipulation's specific disclaimers, Demientieff's later refusal to appeal was foreseeable and merely served to reinstate the status quo existing before the stipulation. Neither the stipulation nor Demientieff's ensuing refusal to appeal justifies Kirk's failure to seek intervention in time to appeal the original judgment.

On these facts, the superior court permissibly found that Kirk knew or reasonably should have known of his grounds for intervening before the court entered its final judgment.

### 2. Foreseeable prejudice to existing parties

The next factor to consider in determining the timeliness of Kirk's motion to intervene is the foreseeable prejudice that granting the motion would cause to the existing parties. This factor requires us to focus specifically on the prejudice flowing from Kirk's delay rather than potential prejudice that might generally result from granting intervention.[8] In assessing this factor, the superior court focused primarily on the prejudice that Kirk's late intervention would cause to Demientieff. The court noted that Demientieff and her counsel had chosen the malpractice suit as the best means of achieving Demien-

tieff's interests. If Kirk intervened in the personal injury case, the court feared, his appeal of the Rule 60(b) issue might sidetrack Demientieff's chosen claim and "drag out an action based on events that occurred over four years ago."

These concerns for Demientieff's procedural rights seem to be greatly diminished now that Kirk and Demientieff have settled the malpractice action and Demientieff has assigned her personal injury claim to Kirk. But a similar concern extends to United and remains unabated. United vigorously argues that in the absence of compelling circumstances it will be unfairly prejudiced if it is forced to defend a judgment that has now been final and no longer appealable since August 2003. Although United fails to pinpoint any case-specific disadvantage it might face as a result of Kirk's delay, United's procedural right to rely on settled rules of finality nonetheless merits considerable weight. On prior occasions we have observed that, of the four factors included in the timeliness analysis, courts usually regard potential prejudice to existing parties as the most important consideration.[9] Courts have been especially reluctant to allow intervention after the trial court enters a final judgment, adhering to the cardinal principle that "intervention will not be permitted to breathe life into a nonexistent lawsuit."[10] Here, Kirk's efforts would strain this principle not once, but twice, for he effectively seeks to breathe life into a Rule 60(b) motion that his stipulation gave him no right to appeal; and his underlying purpose is to resurrect Demientieff's lawsuit, which has been nonexistent since the deadline for appealing the original judgment expired in August 2003.

### 3. Potential prejudice to Kirk

The third factor in the timeliness analysis focuses on the offsetting question whether

---

**8.** *Scammon Bay*, 126 P.3d at 145 (citing *Stallworth v. Monsanto Co.*, 558 F.2d 257, 267 (5th Cir.1977)).

**9.** *Id.* at 143 (citing 7C CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1916 (1986)).

**10.** *Fuller v. Volk*, 351 F.2d 323, 328 (3d Cir. 1965); *see also Houston Gen. Ins. Co. v. Moore*, 193 F.3d 838, 840 (4th Cir.1999) (rejecting an attempt to intervene to file Rule 60(b) motion two months after entry of final judgment); FEDERAL PRACTICE AND PROCEDURE, *supra*, note 9, § 1916, at 444–45.

denying intervention would prejudice Kirk. Kirk argues that denying his motion to intervene seriously prejudiced him because "[a]llowing the order denying relief from judgment to stand unchallenged through appeal significantly impairs Kirk's right to vindicate himself of the ruling and impairs his right to pursue subrogation against United Companies." But this argument jumps too quickly to the prejudice Kirk might suffer if he were unfairly denied the relief from judgment he claimed in the Rule 60(b) motion. As a failed intervenor, Kirk "has standing to appeal only the denial of intervention."[11] Thus, Kirk's claim of potential prejudice must focus on the specific harm he suffered by being denied the opportunity to appeal the superior court's order denying Rule 60(b) relief. To establish a substantial risk of prejudice, then, he would need to show a likelihood of prevailing in the event he were allowed to appeal the order denying his motion for relief from judgment.

Although this likelihood might prove hard to predict in many situations, it seems fairly straightforward here because the question that drives Kirk's right to intervene—timeliness—is functionally identical to the threshold timeliness requirement that governed Kirk's motion for relief under Rule 60(b). Indeed, the timeliness requirement under Rule 60(b) would seem more stringent than the corresponding requirement for intervention, since, as we have seen, in the Rule 60(b) context, Kirk had the burden of establishing a compelling need to justify any delay exceeding the thirty days allowed to appeal the original judgment.

It follows that the third factor of the timeliness analysis—potential prejudice to Kirk—is essentially neutral: standing alone, it neither favors nor disfavors Kirk. If the other timeliness factors establish a strong case for intervention, the potential prejudice from having the right to appeal the Rule 60(b) decision would also tip in favor of intervention; conversely, if the other factors weigh against intervention, there would be no apparent basis for finding a likelihood of reversible error on appeal, so the prejudice factor would weigh against Kirk.

### 4. Idiocratic circumstances for or against intervention

The fourth timeliness factor requires us to consider any unique circumstances in this case that militate for or against intervention. In our view, the only unique circumstance that warrants discussion arises from Kirk's recent settlement of Demientieff's malpractice claim—a settlement that left Kirk with an assignment of Demientieff's personal injury claim against United. Although neither party discusses how this circumstance might affect the issue of intervention, we believe that the point warrants at least a brief mention.

In moving to intervene below and pursuing the point on appeal, Kirk has relied heavily on the theory that his interests conflict sharply with Demientieff's and were imperilled by her tactical choices. Yet as the current owner of Demientieff's claim, Kirk appears to have no further conflict with Demientieff: his sole remaining interest would seem to lie in attempting to win Demientieff's assigned claim against United. On what basis, then, and for what purpose, can Kirk now claim that he should be allowed to intervene for the purpose of appealing the denial of Demientieff's motion for relief from judgment? And if Kirk's ultimate goal is to pursue Demientieff's assigned claim, why should he be entitled to reassert *her* interest in the claim against United, or to breathe fresh life into *her* cause of action? After all, Kirk presumably acquired the claim from Demientieff as it stood at the time of assignment; the assignment could not have restored or rekindled any right Demientieff had already lost. And it seems undisputed that by the time of the assignment, Demientieff had deliberately abandoned her personal injury claim for tactical reasons by failing to appeal the superior court's final order dismissing the claim as time-barred; she had similarly abandoned her later motion for relief from the original judgment by expressly refusing to appeal the October 2004 order denying that motion.

Thus, as the case currently stands, if we allowed Kirk to intervene in his own right

---

**11.** *Scammon Bay,* 126 P.3d at 142–43.

with the ultimate goal of asserting Demientieff's assigned cause of action, we would seemingly be condoning his right to assert, *in Demientieff's name,* a cause of action that she herself had abandoned and could never hope to pursue. Because this idiocratic circumstance leads to anomalous consequences it militates strongly against intervention.

### 5. Combined effect of four-factor timeliness analysis

On balance, when considered as a whole, our analysis of the four timeliness factors decidedly favors upholding the superior court's conclusion that Kirk's motion to intervene was untimely and was properly denied on that basis.

Our recent decision in *Scammon Bay v. Ulak* provides a useful comparison.[12] There, Ulak was seriously injured by exposure to propane while working for Scammon Bay. After Ulak recovered substantial workers' compensation benefits from Scammon Bay, he sued two of Scammon Bay's propane suppliers, claiming that they were liable for his injuries. Under Alaska law, Scammon Bay had a right to recoup benefits it paid Ulak from any funds Ulak recovered against the defendants, provided that his recovery exceeded Scammon Bay's share of Ulak's total damages based on its allocated fault. Despite this right of recovery, Scammon Bay did not initially join in the action, since Ulak's interests appeared to align with its own: even though the defendants moved to allocate fault to Scammon Bay, Ulak had opposed their motion, evidently hoping to maximize his own recovery from the defendants.

As the trial date approached, however, Ulak and the defendants struck an unusual bargain designed to allocate fault to Scammon Bay in a way that might have enabled Ulak to receive settlement payments from the defendants without triggering Scammon Bay's right of recoupment. The settling parties scheduled a hearing before the superior court, seeking approval of their plan and acceptance of the agreed-upon allocation of fault to Scammon Bay. Scammon Bay received no notice of the hearing's purpose until six days before the hearing was held; two days before the hearing, Scammon Bay moved to intervene so that it could oppose the proposed allocation of fault. The superior court denied the motion, finding, among other things, that Scammon Bay's last-minute attempt to intervene was untimely because the case had been pending for more than two years.[13]

We reversed the superior court's ruling. Noting that Scammon Bay's interests initially aligned with Ulak's and that Ulak's counsel had actively represented those interests by opposing the defendants' motion to allocate fault, we found no reason for Scammon Bay to have intervened early, and no need to require premature intervention. Emphasizing the sudden change in Ulak's settlement strategy and the settling parties' failure to notify Scammon Bay of the purpose of the hearing they had scheduled to allocate Scammon Bay's fault, we held that Scammon Bay's last-minute motion to intervene was reasonably timely and should have been granted.[14]

Here, in sharp contrast to *Scammon Bay,* Kirk received clear and early notice that Demientieff's interests actively conflicted with his own and that Demientieff would not adequately represent his interests. Despite this knowledge, Kirk allowed the superior court to enter its judgment of dismissal and, well aware that Demientieff did not intend to appeal, let the time for appealing that judgment expire without seeking to intervene. Almost eleven months then passed before Kirk secured a limited stipulation that allowed him to file a collateral attack on the judgment but left him no right of appeal. Four months later, when the superior court denied the request for relief, Kirk, for the first time, sought to intervene, grounding his motion on Demientieff's refusal to authorize an appeal—a ground he could have asserted more than a year earlier, before the time for

---

**12.** 126 P.3d 138 (Alaska 2005).

**13.** *Id.* at 142.

**14.** *Id.* at 142, 144–45.

a direct appeal expired.[15]

Considering the totality of these circumstances in light of the four-factor timeliness test and our decision in *Scammon Bay*, we hold that the superior court did not abuse its discretion in denying Kirk's motion to intervene.

## IV. CONCLUSION

For these reasons, we AFFIRM the superior court's order denying Kirk's motion to intervene.

---

**15.** In other cases, we have allowed late intervention by applicants who had no prior notice of their interests in the case or sought to intervene promptly after learning of their interest. *See* *Mundt v. NW Explorations, Inc.*, 947 P.2d 827, 830 (Alaska 1997); *McCormick v. Smith*, 793 P.2d 1042, 1044 (Alaska 1990).