Robert L. BRIDGES, M.D., and Alaska Open Imaging, LLC, Appellants,

v.

BANNER HEALTH d/b/a Fairbanks Memorial Hospital, and Karleen Jackson, in her official capacity as Commissioner, State of Alaska, Department of Health and Social Services, Appellees.

No. S–12559.

Supreme Court of Alaska.

Dec. 19, 2008.

As Amended on Rehearing March 5, 2009.

Robert J. Gunther, Law Office of Robert J. Gunther, Anchorage, and Mark S. Bledsoe, Law Offices of Mark S. Bledsoe, Anchorage, for Appellants.

Peter J. Maassen, Ingaldson, Maassen & Fitzgerald, Anchorage, and Peter Gruenstein, Gruenstein & Hickey, Anchorage, for Appellee, Fairbanks Memorial Hospital.

Stacie L. Kraly, Assistant Attorney General, and Talis J. Colberg, Attorney General, Juneau, for Appellees, State of Alaska and Karleen Jackson.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, and CARPENETI, Justices.

OPINION

EASTAUGH, Justice.

## I. INTRODUCTION

The superior court enjoined Alaska Open Imaging Center (AOIC) from operating its Fairbanks magnetic resonance imaging (MRI) facility without first obtaining a certificate of need (CON). Six weeks after the superior court issued the injunction enjoining AOIC, AOIC's medical director, Dr. Robert Bridges, unsuccessfully moved to intervene in the superior court proceeding. Dr. Bridges appeals the denial of his intervention motion and AOIC appeals the injunction. Because the superior court did not err in determining that Dr. Bridges's intervention motion was untimely, we affirm its denial. As to AOIC's appeal, we also affirm in part. The CON statute does not violate the Alaska Constitution's equal protection clause or prohibition against special legislation. But because there appears to be an unresolved genuine issue of material fact about whether AOIC's facility satisfies AS 18.07.111(8)(B)'s exclusion for "offices of private physicians," we vacate the injunction and remand.

## II. FACTS AND PROCEEDINGS

Alaska's certificate of need (CON) statute, AS 18.07.031, requires that a health care provider seeking to construct a "health care facility" at a cost equaling or exceeding the statute's monetary threshold obtain a CON from the Alaska Department of Health and Social Services (DHSS).[1] In 2004 the Alaska Legislature enacted House Bill (H.B.) 511, amending the CON statute.[2] Among other changes, H.B. 511 added the term "independent diagnostic testing facility" to the definition of "health care facility" in AS 18.07.111(8).[3]

Banner Health owns and operates Fairbanks Memorial Hospital.[4] In October 2005 Mike Powers, the hospital's chief executive officer, informed DHSS Commissioner Karleen Jackson that Alaska Open Imaging Center (AOIC) had applied for a building permit to open an MRI facility in Fairbanks without first obtaining a CON; Powers asked DHSS to determine whether AS 18.07.031 required AOIC to obtain a CON.

In November 2005 Commissioner Jackson asked Jeff Kinion, one of AOIC's managers at the time, whether AOIC's plans were subject to the CON requirements. Kinion responded that AOIC's facility is not a "health care facility" under AS 18.07.111(8) because, per AS 18.07.111(8)(B), a "health care facility" does not include "the offices of private physicians ... whether in individual or group practice." Kinion asserted that the CON requirement does not apply to AOIC because AOIC's facility is a private physician's office, not an independent diagnostic testing facility.

In response Commissioner Jackson informed Kinion that DHSS had reviewed the documents Kinion had provided and concluded that the "facility will be constituted as an office of private physicians in group practice and therefore in accordance with AS 18.07.111(8) is not considered a 'health care facility' for the purposes of the [CON] program."

In February 2006 Banner Health asked Commissioner Jackson to reconsider her decision that AOIC's facility did not require a CON. She denied the request, determining that 7 Alaska Administrative Code (AAC) 07.012 "controls this question." This regulation states that, for purposes of AS 18.07.111, " 'independent diagnostic testing facility'

---

1. *See* AS 18.07.031. Subsection (d) mandates that "[b]eginning July 1, 2005, the $1,000,000 expenditure threshold in (a) of this section is increased by $50,000 annually on July 1 of each year up to and including July 1, 2014." When AOIC applied for a building permit, the expenditure threshold was $1,050,000. AOIC does not dispute that the cost of the MRI facility would meet the monetary threshold.

2. Ch. 48, § 7, SLA 2004.

3. AS 18.07.111(8) as amended in 2004 defines "health care facility" as "a private, municipal,

state, or federal hospital, psychiatric hospital, independent diagnostic testing facility, residential psychiatric treatment center, tuberculosis hospital, skilled nursing facility, kidney disease treatment center (including freestanding hemodialysis units), intermediate care facility, and ambulatory surgical facility."

4. We refer to Banner Health and Fairbanks Memorial Hospital collectively as "Banner Health" unless context requires otherwise.

means a fixed-location facility or mobile facility that (1) performs diagnostic testing using major diagnostic testing equipment … and (2) is, or would be, required to enroll as an independent diagnostic testing facility for purposes of Medicare or Medicaid reimbursement under 42 C.F.R. 410.33."[5] Commissioner Jackson concluded that AOIC is not an independent diagnostic testing facility because the Center for Medicare and Medicaid Services does not characterize AOIC as an independent diagnostic testing facility for billing purposes.

In March 2006 Banner Health filed a superior court complaint for injunctive and declaratory relief, naming Commissioner Jackson and AOIC as defendants. Banner Health sought an injunction to enjoin DHSS from relying on 7 AAC 07.012 and a "judicial declaration that 7 AAC 07.012 is void and unenforceable because it unlawfully conflicts with both legislative intent and the plain language of AS 18.07.111(8)." Banner Health asserted that if the regulation exempts entities such as AOIC from the CON laws, the regulation would be inconsistent with the statute because the regulation requires a facility both to be an independent diagnostic testing facility and to enroll as an independent diagnostic testing facility for Medicare and Medicaid reimbursement purposes. Banner Health also requested a preliminary injunction to enjoin AOIC from constructing or operating its Fairbanks facility without a CON.

Commissioner Jackson and AOIC each opposed Banner Health's motion. Commissioner Jackson argued that the statute directed DHSS to include independent diagnostic testing facilities in the CON process, but left DHSS free to define an independent diagnostic testing facility. She asserted that the regulation is valid because DHSS's adoption of the Center for Medicare and Medicaid Services definition is consistent with the statute. AOIC likewise argued that the DHSS regulation is consistent with the statute. It also argued that a balancing of equities did not support Banner Health's request for an injunction and that granting injunctive relief to Banner Health would violate the equal protection clause of the Alaska Constitution.[6] AOIC cross-moved to dismiss the complaint, arguing that if H.B. 511 applied to AOIC it would be an unconstitutional "special act."[7]

The superior court denied AOIC's motion to dismiss in July 2006. In August 2006 the court held a hearing on Banner Health's motion. After concluding that 7 AAC 07.012 is inconsistent with AS 18.07.111, the court, by order of September 7, 2006, declared the regulation "void to the extent it negates the legislature's intent to include AOIC and other like independent diagnostic testing facilities within the definition of 'health care facility,' and thus subject to the requirements of the [CON] program." The court also found that Banner Health would face irreparable harm if the court did not grant injunctive relief; it therefore enjoined AOIC from operating its facility. Concerned whether AOIC could be adequately protected, the superior court made the injunction conditional, giving AOIC 180 days—until February 5, 2007—to obtain a CON before the injunction would take effect. Commissioner Jackson provided AOIC an expedited schedule that, if followed, would allow AOIC to obtain a CON decision before the injunction became effective. AOIC did not apply for a CON.

In October 2006, six weeks after the court granted the injunction against AOIC, Dr. Robert Bridges, AOIC's medical director, moved to intervene in Banner Health's suit. He argued that he is an equity owner of AOIC and the primary guarantor of approximately $10,000,000 of AOIC's debt and that he therefore has "important" individual rights that the injunction impairs.

In December 2006 the superior court denied the intervention motion, concluding that Dr. Bridges had not satisfied the requirements of Alaska Civil Rule 24. The court determined that Dr. Bridges's motion was untimely because he had "been aware of and

5. 7 AAC 07.012(b) (2006).

6. Alaska Const. art. I, § 1.

7. Alaska Const. art. II, § 19 ("The legislature shall pass no local or special act if a general act can be made applicable. Whether a general act can be made applicable shall be subject to judicial determination.").

involved in litigation ... since 3/06 and in [the] administrative process long before that," and that he failed to establish that AOIC did not adequately represent his interests.

In January 2007 Dr. Bridges filed the present appeal in this court and moved under Alaska Appellate Rule 205 for a stay of the injunction pending appeal; we denied his motion.

AOIC closed its facility in February 2007. Dr. Bridges then organized Aurora Diagnostic Imaging, LLC, a limited liability company solely owned by Dr. Bridges, and asked Commissioner Jackson to determine whether Aurora needed to obtain a CON in order to purchase an MRI unit. Commissioner Jackson initially determined that Aurora would be required to obtain a CON, but she later vacated that determination and concluded that Aurora's facility is not a "health care facility" as that term is defined in AS 18.07.111(8).

In March 2007 Banner Health moved for entry of final judgment in its favor. AOIC opposed, and also moved for summary judgment on six of AOIC's affirmative defenses that the court had not expressly discussed (equal protection, procedural due process, substantive due process, unnecessary special legislation, statutory exclusion for private physicians' offices, and failure to join an indispensable person). In April the superior court entered judgment in favor of Banner Health. It did not rule on AOIC's motion for summary judgment.

Dr. Bridges appeals the superior court's denial of his motion to intervene, arguing that he was entitled to intervention as of right; he alternatively argues that he was entitled to permissive intervention. AOIC successfully moved in this court for permission to participate as an appellant with Dr. Bridges. AOIC appeals the injunction, arguing that the CON statute, as amended by H.B. 511, violates the Alaska Constitution's equal protection and protection against unnecessary special legislation provisions. It also argues that it is exempt from the CON program because it is an "office[ ] of private physicians," and that the superior court erred in granting summary judgment to Banner Health before ruling on AOIC's motion for summary judgment and adjudicating AOIC's defenses.

## III. DISCUSSION

### A. Standard of Review

■■■ We apply our independent judgment to constitutional law issues, and consider precedent, reason, and policy.[8] We review for abuse of discretion denials of motions for permissive intervention[9] and denials of motions to intervene as of right if timeliness is at issue.[10] We review entry of a preliminary injunction for abuse of discretion.[11] We will find an abuse of discretion "only when we are left with a definite and firm conviction, after reviewing the whole record, that the trial court erred in its ruling."[12] We review de novo a superior court's legal determinations in issuing a preliminary injunction.[13]

■■■ We review de novo grants of summary judgment and dispositions that in essence have the effect of granting summary judgments.[14] Viewing the facts in the light most favorable to the moving party,[15] we

**8.** *Alaska Pub. Interest Research Group v. State,* 167 P.3d 27, 34 (Alaska 2007); *accord Alaska Legislative Council v. Knowles,* 21 P.3d 367, 370 (Alaska 2001).

**9.** *Reust v. Alaska Petroleum Contractors, Inc.,* 127 P.3d 807, 825 (Alaska 2005).

**10.** *Alaskans for a Common Language, Inc. v. Kritz,* 3 P.3d 906, 912 (Alaska 2000).

**11.** *City of Kenai v. Friends of Recreation Ctr., Inc.,* 129 P.3d 452, 455 (Alaska 2006).

**12.** *Id.* at 455 (internal quotations and citation omitted).

**13.** *Id.*

**14.** *Alaska Trademark Shellfish, LLC v. State,* 172 P.3d 764, 766 (Alaska 2007). No party seems to suggest that the superior court proceeding was effectively an administrative appeal from agency decisions. Because we view the entry of the injunction as having—in essence—granted summary judgment to Banner Health, there is no need to consider sua sponte whether this appeal should be treated as an administrative appeal.

**15.** *McCormick v. Reliance Ins. Co.,* 46 P.3d 1009, 1011 (Alaska 2002).

affirm "if there is no genuine factual dispute and the moving party is entitled to judgment as a matter of law."[16]

### B. AOIC's and Dr. Bridges's Appeals Are Not Moot.

As an initial matter, Banner Health and Commissioner Jackson argue that AOIC's appeal should be dismissed as moot. If AOIC's appeal were moot, Dr. Bridges's appeal would also necessarily be moot as there would be no case in which to intervene.

Banner Health contends that AOIC's appeal of the injunction is moot because AOIC has stopped serving patients at its Fairbanks location, because Dr. Bridges has formed a new company to take over and operate the facility as a private physician's office excluded from the CON requirement, and because AOIC no longer has ownership interest in the Fairbanks office. Commissioner Jackson asserts that "any decision rendered in this appeal would be purely advisory as there is no actual controversy between the parties."

An issue is moot "if it is no longer a present, live controversy, and the party bringing the action would not be entitled to relief, even if it prevails."[17] Because AS 22.05.010(b) allows parties to appeal to this court judgments entered in civil actions commenced in the superior court, we do not need to consider whether the establishment of Dr. Bridges's new business moots AOIC's appeal of the injunction. In *LaMoureaux v. Totem Ocean Trailer Express, Inc.* we said that AS 22.05.010(b) "draws no distinctions between judgments which are adverse because a party has been required to pay money for costs and attorney's fees and those which are ad-

verse because a party has been required to pay money as damages. In each case, an appeal is a matter of right."[18] Here, the superior court awarded a total of $12,870.54 in attorney's fees against AOIC; AOIC therefore has the right to appeal the lower court ruling. And Dr. Bridges therefore may appeal the denial of his motion to intervene in AOIC's suit.

### C. The Superior Court Did Not Abuse Its Discretion in Denying Dr. Bridges's Motion To Intervene.

Dr. Bridges first moved to intervene in the superior court in October 2006. He argued that he was entitled to intervene as of right under Alaska Civil Rule 24(a)[19] and alternatively argued that he was entitled to permissive intervention under Civil Rule 24(b).[20] He contended that he was an equity owner of AOIC and the primary guarantor of approximately $10,000,000 of AOIC's debt and that he therefore had "important" individual rights that the injunction impaired. He asserted below that the injunction impinged on his constitutional rights to equal protection and procedural and substantive due process, and violated the constitutional bar against unnecessary special acts. He also argued that the injunction denied him his right to the statutory exclusion for offices of private physicians.

A four-part test determines whether a party is entitled to intervene as a matter of right:

(1) the motion must be timely; (2) the applicant must show an interest in the subject matter of the action; (3) it must be shown that this interest may be impaired

---

**16.** *Alaska Trademark Shellfish*, 172 P.3d at 766.

**17.** *Wetherhorn v. Alaska Psychiatric Inst.*, 156 P.3d 371, 380 (Alaska 2007) (quoting *Fairbanks Fire Fighters Ass'n, Local 1324 v. City of Fairbanks*, 48 P.3d 1165, 1167 (Alaska 2002)).

**18.** *LaMoureaux v. Totem Ocean Trailer Express, Inc.*, 651 P.2d 839, 840 n. 1 (Alaska 1982).

**19.** Alaska R. Civ. P. 24(a) ("Upon timely application anyone shall be permitted to intervene in an action when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as

a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.").

**20.** Alaska R. Civ. P. 24(b) ("Upon timely application anyone may be permitted to intervene in an action when an applicant's claim or defense and the main action have a question of law or fact in common.... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.").

as a consequence of the action; and (4) it must be shown that the interest is not adequately represented by an existing party.[21]

The superior court denied Dr. Bridges's motion after concluding that Dr. Bridges failed to meet the first and fourth parts. Because a party must meet all four requirements to intervene as a matter of right, we may affirm the superior court's decision if the record supports either ground for denial.[22] We focus here on the timeliness of the intervention motion.

In *Scammon Bay Ass'n v. Ulak* we adopted the four-part inquiry used by federal courts to determine whether a motion to intervene meets Rule 24's timeliness standard:

(1) the length of time the applicant knew or reasonably should have known that its interest was imperilled before it moved to intervene;

(2) the foreseeable prejudice to existing parties if intervention is granted;

(3) the foreseeable prejudice to the applicant if intervention is denied; and

(4) idiocratic circumstances which, fairly viewed, militate for or against intervention.[23]

■■■■ As to the first factor, Dr. Bridges argues that it was "entirely reasonable" for him to expect that the superior court would address his individual rights if it imposed an injunctive order. This argument is without merit. Dr. Bridges did not file his motion to intervene until October 26, 2006—a month and a half after the superior court issued the injunction on September 7, 2006. Dr. Bridges was a founder and part owner of AOIC, and described his positions with AOIC

as its "Medical Director" and "Manager." He was therefore aware or on notice from the time Banner Health first sued AOIC in March 2006 that his individual rights might be impaired by entry of an injunction. Banner Health's March 2006 complaint requested both declaratory and injunctive relief against AOIC. The crux of Dr. Bridges's argument is that he had no reason to intervene sooner because he could not have reasonably foreseen that the superior court would rule against AOIC on its defenses asserting deprivation of individual rights. But a potential party to a cause of action may not delay intervening simply because it wishes to wait to see if an existing party will prevail, or because it assumes that the existing party will prevail. Allowing this delay would effectively grant potentially interested parties the right to what the superior court appropriately termed a "do over."

Noting that the second factor—the foreseeable prejudice to existing parties if intervention is granted—is the "most important" timeliness factor,[24] Dr. Bridges next argues that granting his motion would not have significantly prejudiced other parties because it would have caused "only a minor delay." He similarly argues that the third factor—the foreseeable prejudice to the applicant if intervention is denied—weighs in his favor because the denial of intervention would lead to "considerable prejudice" to himself and would subject him to financial, professional, and reputational harm. But these arguments are unpersuasive because Dr. Bridges has not presented evidence showing that he lacked the opportunity to advance arguments addressing his individual rights before the injunction was entered. The record instead indicates that AOIC argued on behalf of its owners and employees.[25] It also indicates

**21.** *State v. Weidner*, 684 P.2d 103, 113 (Alaska 1984) (adopting four-part test from *Foster v. Gueory*, 655 F.2d 1319, 1324–25 (D.C.Cir.1981)).

**22.** *Harvey v. Cook*, 172 P.3d 794, 799 (Alaska 2007).

**23.** *Scammon Bay Ass'n v. Ulak*, 126 P.3d 138, 143 (Alaska 2005) (citing *Banco Popular de Puerto Rico v. Greenblatt*, 964 F.2d 1227, 1231 (1st Cir.1992)); *see also Kirk v. Demientieff*, 145 P.3d 512, 520 (Alaska 2006) (holding attorney's motion to intervene in former client's tort suit un-

timely because attorney had "clear and early notice" that former client would not adequately represent his interests).

**24.** *Ulak*, 126 P.3d at 143.

**25.** AOIC's May 1, 2006 memorandum opposing Banner Health's motion for a preliminary injunction recognized that Banner Health sought "injunctive relief enjoining the radiologists at [AOIC] from treating their patients"; argued that "the reputations and future economic interests of AOIC and its staff radiologists would be severely

that, on AOIC's behalf, Dr. Bridges filed an extensive affidavit setting out AOIC's position.[26] There is no indication that Dr. Bridges was unable to advocate for his personal rights through AOIC and therefore no reason to think that denying his intervention motion prejudices him.

Dr. Bridges also argues that, under the fourth factor, three "idiocratic circumstances" militate for intervention: the superior court's failure to join Dr. Bridges under Alaska Civil Rule 19(a);[27] Banner Health's acts that "divert[ed]" the superior court from considering the rights of the individual physician; and the superior court's refusal to address AOIC's affirmative defenses. These arguments are unpersuasive. As to the first two, Dr. Bridges was able to advocate for his personal rights through AOIC. As to the third, the superior court's order, entitled "Preliminary and Permanent Conditional Injunction, and Declaratory Judgment," fully resolved the merits of the underlying action. The superior court's oral ruling also establishes that the superior court fully resolved the merits of the underlying case. As we explain in Part III.F, the superior court was not required to explicitly address AOIC's summary judgment motion and affirmative defenses; it implicitly rejected them when it granted the injunction to Banner Health.[28]

Finally, another idiocratic consideration here is that Dr. Bridges first moved to intervene only after the superior court had ruled on the merits and granted the injunction. As we stated in *Mundt v. Northwest Explorations, Inc.*, "[a]pplications [to intervene] made after the conclusion of litigation normally are not timely, absent a showing of justification for the litigant's failure to act more promptly."[29] In light of this touchstone, and for the reasons we discussed above, the superior court did not abuse its discretion in determining that Dr. Bridges's motion was untimely.[30]

Dr. Bridges alternatively argues that the superior court abused its discretion in denying his motion for permissive intervention under Civil Rule 24(b). But permissive intervention also requires "timely application."[31] "[M]otions to intervene of right are found to be untimely less often than are permissive intervention motions due to the greater likelihood of prejudice to the applicant."[32] Because Dr. Bridges's motion for intervention as of right was untimely, the superior court did not abuse its discretion in denying for the same reason Dr. Bridges's motion for permissive intervention.

and irreparably damaged"; and asserted that "the immediate economic effect on AOIC and its radiologists caused by an injunctive order would far outweigh any small economic harm that Banner [Health] may suffer."

26. *See Red Top Mining, Inc. v. Anthony,* 983 P.2d 743, 746–47 (Alaska 1999) (denying company's motion to intervene as untimely because, among other things, two shareholders had been involved and filed affidavits in underlying dispute).

27. Civil Rule 19(a) states in pertinent part:
A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if ... the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may ... as a practical matter impair or impede the person's ability to protect that interest....
Alaska R. Civ. P. 19(a).

28. *See Brandon v. Corr. Corp. of Am.,* 28 P.3d 269, 274 (Alaska 2001) (citing *Parson v. Mara-*

*thon Oil Co.,* 960 P.2d 615, 618 (Alaska 1998); *LeDoux v. Kodiak Island Borough,* 827 P.2d 1121, 1123 (Alaska 1992)) (stating that "a rule on one motion is an implicit denial of another contradictory pending motion").

29. *Mundt v. Nw. Explorations, Inc.,* 947 P.2d 827, 830 (Alaska 1997) (holding applicant's motion to intervene was timely even though it was filed after superior court entered final judgment because record was unclear whether applicant knew, before court issued its order invalidating her interest in land, her parcels of land would be affected by the litigation).

30. *See Alaskans for a Common Language, Inc. v. Kritz,* 3 P.3d 906, 912 (Alaska 2000).

31. *Id.* at 912.

32. *Ulak,* 126 P.3d at 143 (citing 7C CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1916 (1986)).

**D. The Superior Court Did Not Err in Refusing To Rule on AOIC's Summary Judgment Motion and in Granting Final Judgment to Banner Health Before Adjudicating AOIC's Affirmative Defenses.**

██ AOIC argues that the superior court erred in granting injunctive relief to Banner Health before ruling on AOIC's summary judgment motion and addressing AOIC's affirmative defenses. But as AOIC recognizes,[33] "a ruling on one motion is an implicit denial of another contradictory pending motion."[34] Similarly, the superior court was not required to explicitly address AOIC's affirmative defenses. The superior court, in issuing the injunction, implicitly rejected AOIC's constitutional arguments. And, in determining that AOIC's facility is an independent diagnostic testing facility, it implicitly rejected AOIC's argument that its facility is a private physician's office.[35] We therefore next address the merits of AOIC's arguments.

**E. Alaska Statute 18.07.111(8), as Amended by H.B. 511, Does Not Violate the Equal Protection or Special Acts Provisions of the Alaska Constitution.**

AOIC advances an equal protection argument,[36] asserting that AS 18.07.111(8), as amended by H.B. 511, is discriminatory because it allows cardiologists at the Alaska Heart Institute, urologists at the Alaska Urological Associates, and orthopedists at the Alaska Spine Institute "to expend funds beyond the CON threshold to purchase such equipment for their *private* offices." (Emphasis added.) AOIC contends that H.B. 511's inclusion of independent diagnostic testing facilities in the CON statute's definition of "health care facility" has the effect of including the offices of radiologists who use MRIs and CT scanners, while excluding the offices of cardiologists, urologists, and orthopedists who use the same equipment. AOIC contends that "such disparate treatment accorded the offices of radiologists *vis a vis* the offices of other medical specialties using the same equipment violates equal protection because the classification chosen does not closely relate to a legitimate and important governmental interest."

██ Equal protection claims are analyzed under a "sliding scale approach which places a greater or lesser burden on the state to justify a classification depending on the importance of the individual right involved."[37] Banner Health concedes that the right of an owner of an independent diagnostic testing facility to construct an MRI facility is an "important" right for equal protection purposes.[38] Under the sliding scale approach, burdening an important right must be justified by an important governmental objective, and there must be a close nexus between

---

**33.** AOIC's opening brief states, "Appellants submit that [a superior court's decision to not address a motion for summary judgment] is an implicit denial of the motion...." In objecting to Banner Health's proposed judgment below, AOIC stated that "[t]he court's oral ruling of August 8, 2006 implicitly rejects AOIC's legal arguments regarding the applicability of Art. I, § 1 (equal protection) and Art. II, § 19 (special acts) of the Alaska Constitution."

**34.** *Brandon v. Corr. Corp. of Am.*, 28 P.3d 269, 274 (Alaska 2001).

**35.** *See* Catherine M. Boerner, *Online OIG Audit Reports Offer Additional Information About Independent Diagnostic Testing Facilities*, 9 NO. 1 J. Health Care Compliance 39, 40 (2007) ("[Independent diagnostic testing facilities] are entities independent of hospitals or physician offices in which licensed or certified nonphysician personnel (technicians) perform diagnostic tests under physician supervision.").

**36.** Article I, section 1 of the Alaska Constitution provides:

> This constitution is dedicated to the principles that all persons have a natural right to life, liberty, the pursuit of happiness, and the enjoyment of the rewards of their own industry; that all persons are equal and entitled to equal rights, opportunities, and protection under the law; and that all persons have corresponding obligations to the people and to the State.

**37.** *Glover v. State, Dep't of Transp., Alaska Marine Highway Sys.*, 175 P.3d 1240, 1257 (Alaska 2008).

**38.** *See Commercial Fisheries Entry Comm'n v. Apokedak*, 606 P.2d 1255, 1266 (Alaska 1980) (stating that "right to engage in economic endeavor" is "important").

that objective and the means chosen to accomplish it.[39]

▮ We do not need to consider whether the CON statute is justified by an important governmental objective or whether there is a close nexus between that objective and the means chosen to accomplish it, because we conclude that the CON statute does not treat similarly situated entities differently. The statute does not distinguish between radiologists and other specialists; it is facially neutral and classifies all independent diagnostic testing facilities as health care facilities.[40] Furthermore, the exclusion for "offices of private physicians" excludes all private physicians' offices from the CON statute, regardless of medical specialty.[41] The DHSS regulations define "independent diagnostic testing facility" based on the type of equipment used, and also include types of equipment used by specialists other than radiologists.[42] It therefore appears that the medical groups AOIC mentions are exempt from the CON requirement not because of their specialities, but because they satisfy the exclusion for "offices of private physicians." AOIC has not argued that radiologists cannot satisfy that exclusion.

▮ AOIC also contends that the CON statute's definition of "health care facility" is unconstitutional because it violates the prohibition against special acts.[43] This prohibition was adopted "to prevent abuse of the legislative process by picking favorites."[44] "A statute is unconstitutional special legislation if (1) it creates [a] totally arbitrary and unreasonable method of classification, or (2) it creates a permanently closed class."[45] We evaluate challenges under this provision according to the test applied to nonsuspect classifications in equal protection cases.[46] Under this test, we examine the "legislative goals and the means used to advance them [to] determine whether the legislation bears a 'fair and substantial relationship' to legitimate purposes."[47]

▮ On its face, H.B. 511 is a general act.[48] But AOIC argues that "the superior court has concluded that the *general* classification 'independent diagnostic testing facility' must be viewed as a *special* classification that creates a permanently closed class that will forever and for all time include AOIC." (Emphasis in original.) Because AOIC does not argue that H.B. 511 creates an arbitrary and unreasonable method of classification, we

---

**39.** *State v. Enserch Alaska Constr., Inc.*, 787 P.2d 624, 633 (Alaska 1989).

**40.** *See* AS 18.07.111(8).

**41.** *See* AS 18.07.111(8)(B).

**42.** The DHSS regulation states:
(b) For purposes of AS 18.07.111 and this section, "independent diagnostic testing facility" means a fixed-location facility or mobile facility that
(1) performs diagnostic testing using major diagnostic testing equipment; for purposes of this paragraph, "major diagnostic testing equipment" means
(A) magnetic resonance imaging (MRI) equipment;
(B) a cardiac catheterization laboratory and related imaging equipment;
(C) ultrasound imaging equipment;
(D) a positron emission tomography (PET) scanner;
(E) a computed tomography (CT) scanner; or
(F) a positron emission tomography/computed tomography (PET/CT) scanner....
7 AAC 07.012(b).

**43.** Article II, section 19 of the Alaska Constitution provides:

> The legislature shall pass no local or special act if a general act can be made applicable. Whether a general act can be made applicable shall be subject to judicial determination. Local acts necessitating appropriations by a political subdivision may not become effective unless approved by a majority of the qualified voters voting thereon in the subdivision affected.

**44.** 2 NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 40.1, at 212–13 (6th ed.2000) (citing *Boucher v. Engstrom*, 528 P.2d 456 (Alaska 1974) (*overruled on other grounds by McAlpine v. Univ. of Alaska*, 762 P.2d 81 (Alaska 1988))).

**45.** *Id.* at 213.

**46.** *Baxley v. State*, 958 P.2d 422, 430 (Alaska 1988).

**47.** *State v. Lewis*, 559 P.2d 630, 643 (Alaska 1977).

**48.** *See* AS 18.07.111(8).

focus solely on AOIC's closed-class argument.

■ As the Nebraska Supreme Court stated, "A closed class is one that limits the application of the law to present condition, and leaves no room or opportunity for an increase in the numbers of the class by future growth or development...."[49] Alaska Statute 18.07.111(8), as amended by H.B. 511, applies uniformly to any entity that seeks to construct an independent diagnostic testing facility.[50] It does not specifically target AOIC, and the class covered by the statute will grow if additional health care providers seek to construct independent diagnostic testing facilities. The statute therefore does not create a closed class potentially prohibited by the Alaska Constitution. It consequently does not violate the constitutional prohibition against special acts.

### F. Whether AOIC Is a "Private Physician's Office" that Is Exempt from the CON Program Presents a Genuine Issue of Material Fact.

■ AOIC argues that the superior court erred in determining that AOIC is not a private physician's office excluded by AS 18.07.111(8)(B) from the definition of "health care facility." Although H.B. 511 amended the definition of "health care facility" to include independent diagnostic testing facilities, it did not alter the private physician's office exclusion.[51]

Because the superior court did not conduct a trial or evidentiary hearing, we review the grant of the injunction as a grant of summary judgment. We consequently review the injunction to determine whether the superior court was correct in concluding that, as a matter of law, AOIC is not a private physician's office exempt from the CON laws. In so doing, we view all factual inferences in favor of AOIC, and view the facts in the light most favorable to it.[52]

Commissioner Jackson argues that AOIC is not a private physician's office because at the legislative hearing on H.B. 511, AOIC identified itself as an independent diagnostic testing facility. Dr. Bridges there testified that AOIC "is the only independent diagnostic testing facility in Alaska" and AOIC's then-CEO, Sam Korsmo, answered affirmatively when a legislator asked him whether H.B. 511 would affect AOIC. Korsmo answered that "[t]he bill will impact AOIC if it chooses to upgrade equipment or expand services. It would be required to request a CON."

The superior court determined that AOIC was not exempted by the private physician's office exclusion because "the legislative history establishes that it was the intent of the legislature when HB–511 was passed to include Alaska Open Imaging Center and similar imaging centers in the definition of health care entities under independent diagnostic treatment facilities for purposes of the certificate of need statute." But given that "independent diagnostic testing facility" is a term of art that was coined by the Center for Medicare and Medicaid Services and that appears to have no general usage outside the Medicare classification context,[53] it is logical to conclude that the legislature intended the term to have the same meaning given it by the agency.

According to AOIC, it identified itself as an independent diagnostic facility during the legislative hearing because AOIC was then classified as such by the Center for Medicare and Medicaid Services. At AOIC's request, the agency later conducted a review and determined that AOIC was a physicians' group practice rather than an independent diagnostic testing facility. Taken in the light most favorable to AOIC, this reclassification gives rise to a genuine issue of material fact as to whether AOIC was an independent diagnostic testing facility when the superior

49. *City of Ralston v. Balka,* 247 Neb. 773, 530 N.W.2d 594, 601 (1995) (internal quotations and citation omitted).

50. *See* AS 18.07.111(8).

51. *See* ch. 48, § 7, SLA 2004.

52. *See Anchorage Citizens for Taxi Reform v. Municipality of Anchorage,* 151 P.3d 418, 422 (Alaska 2006).

53. Health Care Financing Administration [now Center for Medicare and Medicaid Services], 62 Fed.Reg. 33158 (proposed Jun. 18, 1997), 1997 WL 329235 at *33179–81.

court ruled on AOIC's defense. The manual for the federal Medicare program describes the standards the Center for Medicare and Medicaid Services uses to decide whether an entity is an independent diagnostic testing facility.[54] We accordingly remand to superior court with instructions to use standards such as these to determine whether AOIC satisfies the private physician's office exclusion at the time Banner Health moved to enjoin its operation in Fairbanks.

No party has argued that we should allow the commissioner to either interpret the controlling statute or make additional fact findings, but given the basis for our remand, we do not mean to foreclose the superior court from considering whether a remand to the commissioner would be appropriate.

## IV. CONCLUSION

We therefore AFFIRM the denial of the intervention motion, VACATE the injunction, and REMAND for further proceedings consistent with this opinion.

WINFREE, Justice, not participating.

---

**54.** The manual provides that an entity generally should not be considered independent from a physician's office if:

    [1] It is a physician practice that is owned, directly or indirectly, by one or more physicians or by a hospital;

    [2] The entity primarily bills for physician services (e.g., evaluation and management (E & M) codes) and not for diagnostic tests;

    [3] It furnishes diagnostic tests primarily to patients whose medical conditions are being treated or managed on an ongoing basis by one or more physicians in the practice;

    [4] The diagnostic tests are performed and interpreted at the same location where the practice physicians also treat patients for their medical conditions.

    . . . .

We recognize that many diagnostic tests are radiological procedures that require the professional services of a radiologist. We also recognize that the nature of a radiologist's practice is generally very different from those of other physicians because radiologists usually do not bill E & M codes or treat a patient's medical condition on an ongoing basis. Nevertheless, a radiologist or a group of radiologists should not necessarily be required to enroll as an IDTF. The following features would

indicate that a radiology practice is not "independent from a physician office or hospital":

    [1] The practice is owned by radiologists, a hospital, or both;

    [2] The owner radiologists and any employed or contracted radiologists regularly perform physician services (e.g., test interpretations) at the location where the diagnostic tests are performed;

    [3] The billing patterns of the enrolled entity indicate that the entity is not primarily a testing facility and that it was organized to provide the professional services of radiologists (e.g., the enrolled entity should not bill for a significant number of purchased interpretations, it should rarely bill only for the technical component of a diagnostic test, and it should bill for a substantial percentage of all of the interpretations of the diagnostic tests performed by the practice); and

    [4] A substantial majority of the radiological interpretations are performed at the practice location where the diagnostic tests are performed.

Center for Medicare and Medicaid Services, Medicare Program Integrity Manual ch. 10, 5.1 (2005).